## White v. White.

*Divorce—Desertion—Driving wife from home.*

A husband who had been living with his wife for twenty-nine years will not be granted a divorce on the ground of desertion where it appears that the libellant ordered the respondent from his home at a late hour of the night, and that, in doing so, he assumed a quarrelsome and belligerent attitude and did not afterwards make any attempt in good faith at reconciliation.

Exceptions to master's report. C. P. No. 1, Phila. Co., Sept. T., 1926, No. 2392.

*J. H. Simms,* for libellant; *David Lavis,* for respondent.

McDEVITT, P. J., Feb. 3, 1928.—This matter comes before the court on exceptions filed by respondent to the report of the master, recommending a divorce. Briefly, the facts are as follows:

Libellant and respondent have both passed the age of sixty. They were married on March 8, 1890, nearly forty years ago, and lived together until May of 1919, when, according to libellant, respondent and her son left the common domicile, and, according to respondent, they were driven from their home.

According to the libellant, the difficulty in the month of May, 1919, arose when he reprimanded his son, the only living of four children, because he had seen him talking to a woman of questionable character at the son's place of employment. This was denied by the respondent and the son, both of whom testified that the quarrel was occasioned by the quarrelsome and belligerent attitude of the libellant, who, in consequence of the same, ordered both of them from the house at a late hour of night.

For three years and upwards, libellant had ignored respondent, had carried on no conversation with her, and even when contributing to the support of the household, according to respondent and her son, would send the message or the contribution through the son as an intermediary.

The master seemed impressed with the fact that libellant had taken great interest in the development of his son during his youth and seems to think that this counter-balances the testimony of the respondent and the son concerning his alleged abuse on the night of the separation. The reverse conclusion might be reached—that his attitude on the night of the separation only bears out the contention of the respondent and son that for the period indicated by them, his attitude had changed because of allegations of outside interests which failed of substantial proof. Whatever the reason or the inspiration may have been, there was a change in his attitude sometime prior to the separation; and family differences arising in what must, by the rule of reason, be the sunset of the lives of the principals should be overlooked instead of being over-emphasized. Those who have lived together for twenty-nine years should have better grounds for divorce than those alleged in this action. Whatever the disagreement, controversy or quarrel may have been,

nothing in the record justifies the driving of respondent from libellant's household, nor the failure of libellant in the *interim* to attempt in good faith to effect a reconciliation.

Marriage is accepted and recognized by all civilized nations as a peculiar and favored contract. It is, in its origin, a contract of natural law; but it has grown to be something more than a mere contract. It is a recognized institution of society, founded upon the consent and contract of two parties, and in this, however, it has some peculiarities in its nature, character, operations and extent of obligation different from those that belong to ordinary contracts. It is the parent, not the child, of society. Upon it rests the social structure of not only the state but the nation.

Under our laws, it is a civil contract, regulated and prescribed by law and endowed with civil consequences. In other countries, where it has had the sanction of religion superadded, it is a religious as well as a civil contract, and it is a mistaken idea that it cannot be both at the same time.

While the sanctity attending the marriage contract does not enter into the question of a violation of it as a civil contract, it, nevertheless, should throw about it an additional cloak of protection and make it the harder to rescind.

Marriage is the most important of all human transactions; and the rights, duties and obligations arising from it cannot be regulated exclusively by the agreement of particular parties, but rather, to a great extent, by legislative regulation which must be construed as matters of public policy. For instance, unlike other contracts, it cannot be rescinded or waived by mutual consent, though nowadays the popular interpretation of a marriage contract is one of convenience, to be chucked or shelved for slight provocation. Discretion and caprice of parties to marriage contracts should not be permitted to interpret the obligations arising therefrom, nor should the conventions of society, lax as they now are, be permitted to destroy the foundations of an institution that spells the future or ruination of a nation. In the interests of morality and the well-being of the entire state and nation, the marriage contract must be protected, rather than that ways and means be devised to destroy its usefulness and make easy its rescission.

Divorce strikes at the heart of civilization, and we cannot consider divorce apart from the reasons for marriage and remarriage, which nowadays seem to be so different from what they were originally. Whether it be the craving for riches, relief from employment, release from paternal restraint or unbridled passion and sensual desires, the fact remains that there are more hasty marriages nowadays than heretofore, and that the majority of divorces are the result of such hasty marriages. In practically every book of the Bible there is a reference to divorce, and in most of them the admonition is to the male party to the contract, which only goes to prove that it is not a new question, but one that has assumed more dangerous proportions than ever before. The ease with which divorces can be procured is, in our opinion, the principal cause of the present situation. If the grounds for divorce were limited to a statutory offense, instead of every whim of a disgruntled husband or wife magnified into cruel and barbarous treatment or indignities to the person, it might make them stop and ponder before taking the first step toward destruction.

This court has carefully reviewed all the testimony. We have drawn all the inferences that might be legally drawn from the evidence produced by both sides, but we do not feel that the proof of the libellant rises to the level necessary to establish a good ground for divorce under our laws as at present constituted. We have not, of course, had the advantage enjoyed by the mas-

ter of seeing the principals to this action, but we must take judicial notice of every-day affairs, and exercise our own common sense in interpreting conduct and actions in such cases.

The recommendation of the master is disapproved, the exceptions of the respondent are affirmed and the libel dismissed.